Strafford,
No. 5390.

STATE *v.* ROBERT WILLS.

Argued February 1, 1966.
Decided March 30, 1966.

*William Maynard,* Attorney General, *William F. Cann,* Assistant Attorney General and *Robert A. Carignan,* county attorney (*Mr. Cann* orally), for the State.

*Robert R. Renfro* (by brief and orally), for the defendant.

KENISON, C.J. The defendant was indicted and convicted, after trial by jury, of breaking and entering a dwelling house at night with intent to commit larceny therein in violation of RSA 583:2. The defendant's appeal, allowed by *Loughlin,* J., is based on the contention that the evidence does not "establish that Wills intended to commit larceny when he entered the dwelling house."

At approximately 12:45 A.M. on the morning of December 19, 1964, James Richardson was awakened when someone

"banged" into a metal railing on a stairway leading from the living room on the lower level to the bedroom on the upper level of his house, situated at 3 Riverdale Avenue in Dover, New Hampshire. The house was in darkness except for some light coming in from a street light across the street. The front door had been closed but not locked. Richardson called out, "Who's out of bed?" but no one answered. He could see shadows moving on the upper level. He then shouted, "There's somebody in the house" as he ran out of his bedroom towards the top of the stairs. In the meantime someone had moved down the stairway but Richardson could not see who it was. Richardson saw a man he had never seen before at the foot of the stairs near the door and ordered him not to move, then called his wife to turn on the lights and summon the police which she did. The defendant was at the foot of the stairs. The defendant told Richardson and the police officer that he had been sent there to obtain a tow rope to aid a stranded motorist who was near the Community House, "off the road."

The defendant was taken in the police cruiser to find the stranded motorist but no automobile was located near the Community House nor were any tracks of any automobile in the snow discovered there or at other places that the defendant claimed there was an automobile stranded on the side of the road. A 3/8-inch tow rope, 30 to 35 feet long, was in the rear seat of the defendant's car. The defendant was sober. Nothing was taken from the Richardson dwelling and a wallet with two hundred dollars in it was still lying on the "hi-fi" in the living room where it had been left by Richardson when he retired for the night.

The evidence summarized in the two previous paragraphs is not seriously disputed except the defendant denied that he was on the upper level of the Richardson house. The defendant testified that he knocked on the front aluminum door of the Richardson house two or three times, rang the bell and hit the door and that after he opened it and stepped inside the house, he "hollered 2 or 3 times."

All of the elements of the statutory crime of breaking and entering a dwelling house at night with intent to commit larceny therein ( RSA 583:2 ) must be proved by the State and no burden is placed on the defendant to disprove any part of the offense. *State* v. *Tierney,* 104 N. H. 408. Nevertheless, any element of the offense can be proved by circumstantial evidence. *State* v.

*Keegan,* 106 N. H. 152; *State* v. *Skillings,* 98 N. H. 203; *State* v. *Bancroft,* 10 N. H. 105. Conduct illuminates intent. "If, for example, the charge is of breaking and entering with intent to steal, obviously 'intent' here signifies 'design', or 'plan', and whatever would otherwise be receivable to show Design would also be here receivable, — in particular, the conduct throwing light on the design of the person's entrance." 2 Wigmore, Evidence ( 3d *ed.* ) *s.* 242, *pp.* 38, 39. Wigmore, *supra, p.* 39, n. 1, cites *State* v. *Teeter,* 69 Iowa 717, 718, 719, in part as follows: "It often occurs in human experience that the mere fact that a particular act has been done affords the best evidence of the motive or intention with which it was done . . . So if one was to be found in the nighttime in the act of breaking into a building in which money or property of great value was deposited, his act would give very strong evidence indeed of the motive or purpose which prompted it."

Intent to steal is frequently not susceptible of direct proof ( *State* v. *Moore,* 12 N. H. 42, 48 ) and a jury may convict or acquit a defendant depending on the strength of the inference that may be drawn from the defendant's conduct under all the circumstances of the case. *State* v. *Charette,* 98 N. H. 477; *State* v. *Mihoy,* 98 N. H. 38; *State* v. *Burley,* 95 N. H. 77; *State* v. *Amero,* 106 N. H. 134. "Some statutes and judicial decisions go so far as to create a presumption that an unexplained breaking and entering is made with intent to commit a crime." Model Penal Code, Art. 221.1, *comment* 4, *p.* 60 ( Tent. Draft No. 11, 1960 ). *Commonwealth* v. *Ronchetti,* 333 Mass. 78; *Ex parte Seyfried,* 74 Idaho 467. The Model Penal Code considers such a presumption unnecessary and undesirable. This presumption has not been employed in this jurisdiction since 1869 when *State* v. *Hodge,* 50 N. H. 510, 526 decided that there is no legal presumption of guilt from exclusive possession of property recently stolen. For a discussion of the significance of that decision see Reid, A Speculative Novelty — Judge Doe's Search for Reason in the Law of Evidence, 39 B. U. L. Rev. 321, 327-329 ( 1959 ). 1 Wigmore, Evidence ( 3d *ed.* ) *s.* 152. An unexplained breaking and entering may give rise to an inference that it was made with intent to commit larceny but there is no presumption cast on the defendant. See *State* v. *Gobin,* 96 N. H. 220, 222.

The defendant's counsel contends that the circumstances surrounding his breaking and entering into the Richardson dwelling

are more exculpatory than inculpatory and states that the defendant's "explanation for being in the house was plausible, though unconfirmed or even unconvincing." It is clear from the record that the defendant's explanation was unconfirmed and, in view of the evidence introduced by the State, was likewise unconvincing. To say that his explanation was plausible taxes the capacity of the fact-finder under the circumstances of this case. The jury was not required to accept the defendant's explanation that he was looking for a tow rope for a stranded motorist who could not be discovered, particularly where the automobile of the stranded motorist left no tracks in the snow on the side of the road where the defendant claimed he was. Furthermore, the jury was not bound to believe the defendant's explanation of being a good Samaritan when he entered a dwelling house in the darkness in the nighttime and was prowling on both the first and second levels of the dwelling in comparative silence. *State* v. *Worthen,* 111 Iowa 267, 269.

We conclude that the jury had sufficient evidence to warrant the finding that the defendant was guilty of breaking and entering the Richardson dwelling in the nighttime with intent to commit larceny therein. 2 Wharton, Criminal Law and Procedure, s. 408, *pp.* 28, 29; *State* v. *Keegan,* 106 N. H. 152; *State* v. *Tierney,* 104 N. H. 408.

*Defendant's exceptions overruled.*

All concurred.