THE STATE OF NEW HAMPSHIRE

v.

MICHAEL SCARLETT

December 29, 1978

*Thomas D. Rath*, attorney general (*John C. Boeckler*, assistant attorney general, orally), for the State.

*Bruce E. Kenna*, of Manchester, by brief and orally, for the defendant.

BOIS, J. This case presents five issues that were preserved for our review by exceptions taken during a trial at which the defendant was convicted of aggravated felonious sexual assault. RSA 632-A:2 (Supp. 1977). The defendant challenges the sufficiency of the evidence, the propriety of the Trial Court's (*Goode*, J.) pretrial competency hearing for juvenile witnesses, the propriety of certain interstitial jury instructions, the admission of alleged hearsay statements, and finally, the judge's denial of the defendant's motion for a mistrial subsequent to the display of allegedly prejudicial and inadmissible evidence to

the jury. Because we sustain the defendant's last exception, we do not address the other issues presented for our review.

On April 22, 1977, a six-year-old female child was lured away from her playmates by an adult male. She was beaten and sexually molested. The defendant does not dispute the fact that these acts were committed; he does dispute the State's accusation that he is the one who did them. Consequently, identity was the central issue at trial.

Substantial evidence was presented to the jury linking the defendant to the crime. Most incriminating was the testimony of the victim's young playmates who were with her when she left with her molester. Photographs of the defendant's apartment, the alleged scene of the attack, also served to connect the defendant to the crime. Most damaging of these was a photograph of an apparently blood-stained bedspread that covered the defendant's bed, the bed upon which the State contended that the attack occurred.

The incident underlying the issue that we find dispositive in the present case occurred halfway through the trial. The State, while eliciting testimony from a police officer, displayed to the jury what appeared to be a blood-stained bedspread, marked it for identification, and began an attempt to admit it into evidence.

█ █ Five months prior to the trial, the State was aware that the testimony of the chemist who had tested and analyzed the stains on the bedspread would be necessary in order to prove them to be blood. We must presume that the prosecutor, as an experienced attorney, realized that the chemist's testimony was essential in order to establish the foundation for admissibility of this incriminating item of evidence. Nevertheless, the chemist was not present at trial or even scheduled to testify on behalf of the State. Only through defense counsel oversight coupled with judicial error could the bedspread have been admitted into evidence. We hold public prosecutors to a high standard of conduct. *State v. Arthur*, 118 N.H. 561, 563, 391 A.2d 884, 885 (1978). The State overreached when it displayed the bedspread to the jury under these circumstances. ABA Standards Relating to the Prosecution Function § 5.6(d) (1971).

The defense counsel made timely objection to the bedspread being marked for identification. The court overruled the objection, undoubtedly assuming that proper foundation for admissibility would be forthcoming. Although the defense counsel's objections to the subsequent testimony concerning the bedspread were properly sustained, and the testimony stricken, the jury had already heard the

police officer's testimony that the stains were blood, and that the sheet had been taken from the defendant's bedroom. This highly incriminating information struck a telling blow to the essence of the defendant's defense, that the State could not identify him as the molester.

At this juncture, the trial court first suspected that the proper foundation for admissibility would not be forthcoming from the State. The court inquired: "Does the State, at some point further in its case, intend to establish through some other evidence that the stains, in fact, appearing on that bedspread have been analyzed as blood?" The State replied, "No." The defense counsel immediately moved for a mistrial. The trial court took the motion under advisement, recessed the proceedings for the remainder of the day, and ordered both counsel to meet with him privately in his chambers.

The court denied the mistrial motion the next morning. It then attempted to cure the prejudice to the defendant by giving a considered and stern limiting instruction to the jury. The court ordered the jury to "disregard entirely your observations" and "disregard any testimony" concerning the bedspread. The court warned the jury that the bedspread "has no evidentiary or probative value," and advised it that "the State was in error in attempting to offer this evidence." The defendant excepted to the court's denial of his motion for a mistrial, arguing that he had been irreparably prejudiced by the improper display of the bedspread to the jury, and that no curative instruction could remedy that prejudice. We agree and sustain the defendant's exception. "Although the actions of the presiding judge were commendable as well as perceptive . . . we are unable to conclude that his efforts were sufficient to purge the prejudicial questioning." *Morgan v. Hall*, 569 F.2d 1161, 1167 (1st Cir. 1978); *see United States v. Hale*, 422 U.S. 171, 180–81 (1975).

The State concedes that its display of the inadmissible bedspread was error, but contends that it was harmless because there was sufficient other evidence against the defendant to support a conviction. That standard for harmless error is one we have considered and specifically rejected. *State v. Labranche*, 118 N.H. 176, 179, 385 A.2d 108, 110 (1978); *State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976); *accord, Fahy v. Connecticut*, 375 U.S. 85, 86–87 (1963).

 The present case is technically distinguishable from *State v. Ruelke* because the improper evidence was never erroneously admitted, but the distinction is one without legal significance. It was

error for the State to have displayed the bedspread knowing that the bedspread could not have been admitted into evidence. The burden of establishing that the error was harmless beyond a reasonable doubt rests upon the State. *Palmer v. Dimick*, 77 N.H. 565, 566, 94 A. 268, 268 (1915); *accord, Chapman v. California*, 386 U.S. 18, 24 (1967); *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492, 495 (1975); *Commonwealth v. Davis*, 452 Pa. 171, 177–78, 305 A.2d 715, 719 (1973).

As an appellate court, we could never precisely determine the degree to which the jury may have been influenced by the sight of the bloodied bedspread. *See State v. LaBranche*, 118 N.H. at 179, 385 A.2d at 110. We can confidently hold, however, that under our harmless error standard, the State has not shown "beyond a reasonable doubt that the [improper display of] inadmissible evidence did not affect the verdict." *State v. Ruelke*, 116 N.H. at 694, 366 A.2d at 498.

> *Exception sustained; remanded for a new trial.*

All concurred.