Rockingham
No. 80-129

THE STATE OF NEW HAMPSHIRE

v.

MARJORIE BUCKINGHAM

May 7, 1981

*Gregory H. Smith*, acting attorney general (*Martha V. Gordon*, attorney, on the brief and orally), for the State.

*Nadeau Professional Offices*, of Portsmouth (*J. P. Nadeau* on the brief and orally), for the defendant.

KING, J.  The defendant, Marjorie Buckingham, appeals from her conviction for negligent homicide pursuant to RSA 630:3. She alleges that the results of blood tests should have been excluded from evidence because the police failed to notify her of the results within forty-eight hours of their receipt by the police, as required by RSA 262-A:69-a. She also argues that there was insufficient evidence to support her conviction. Finally, she questions the authority of the superior court to suspend her right to operate a motor vehicle for a period of three years as part of her sentence. We affirm the defendant's conviction, but vacate that part of her sentence suspending her license.

The defendant and the victim, Kenneth Motes, were friends and had spent the evening of July 5, 1979, together driving in the defendant's truck. For some reason, the defendant steered the vehicle to the side of the road and stopped. The victim got out of the truck for a few moments. As the victim attempted to get back in the truck, the defendant drove off and dragged the victim for some distance. The victim was seriously injured and died as a result of the injuries he sustained.

A passing motorist who observed the incident followed the defendant's truck, convinced her to stop, and returned with her to

the scene of the incident. When the police arrived, they arrested her and took her to the station where she consented to a breathalyzer test. After she failed the breathalyzer test, the defendant requested a chemical test of her blood pursuant to RSA 262-A:69-b.

The police took the defendant to the Portsmouth Hospital where two samples of her blood were drawn. These samples were sent to the police laboratory where one sample was tested and the other held for thirty days. The Portsmouth police received the results of the blood test from the laboratory shortly after it completed the test. They did not notify the defendant of the results. In November, 1979, the defendant learned the results of the blood test.

■ The defendant was charged with negligent homicide under RSA 630:3 and was tried in February, 1980. At trial, the defendant filed a motion to suppress the evidence of the blood tests on the ground that the police had failed to notify her of the results of the blood tests within forty-eight hours of their receipt of them. The Trial Court (*Pappagianis*, J.) denied this motion and admitted the evidence. The jury convicted the defendant, and she appealed.

RSA 262-A:69-a, the implied consent law, states that any person who operates a motor vehicle upon a public highway in this State impliedly consents to chemical tests of his blood, urine or breath for the purpose of determining the alcohol or controlled drug content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving while under the influence of alcohol or controlled drugs. The statute further provides that "[a] copy of the report of any such test shall be furnished by the law enforcement agency to the person tested within 48 hours of receipt of the report by the agency. . . ." *Id.*

RSA 262-A:69-b provides that a person to whom RSA 262-A:69-a is applicable may request that additional tests be performed at his own expense. Under the provisions of this section, the police must draw a sample of the person's blood or urine in an amount sufficient for two tests. *Id.* The laboratory performing the test for the State must retain the second sample for thirty days subsequent to the test conducted by the State. *Id.* This additional sample must be made available to the person or his counsel immediately upon request. *Id.* There is no statutory duty imposed upon the State to inform the person within forty-eight hours of the results it obtains from its test of one of the two samples of blood the State draws pursuant to the *defendant's* request for an additional test under this section. Consequently, the fact that the defendant did not learn

of the results of this blood test for four months is only relevant if the police ordered the test.

The defendant asserts that the blood test was ordered by the police in addition to the breathalyzer test given at the police station. Two police officers testified, however, that the defendant requested the blood test. The resolution of conflicts in the evidence is for the trial court, and the court was free to believe the version of the police. *See State v. Noel*, 119 N.H. 522, 526, 404 A.2d 290, 292–93 (1979). The trial court admitted the evidence, thus indicating that it believed the police version of events.

The defendant next argues that the evidence could not support a finding of guilt beyond a reasonable doubt because the evidence failed to establish that the defendant caused the victim's death. In assessing the sufficiency of the evidence to support a guilty verdict, we must review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Scarlett*, 121 N.H. 37, 40, 426 A.2d 25, 27 (1981); *State v. Kiluk*, 120 N.H. 1, 4, 410 A.2d 648, 650 (1980).

The State introduced evidence to show that the defendant caused the death of the victim either through negligence or while operating a motor vehicle while intoxicated. One witness testified that she had observed the victim attempting unsuccessfully to get into the defendant's truck as the truck began to accelerate and that the victim was dragged for some distance. Two other witnesses testified that they also observed the incident, and their account was substantially the same as that given by the first witness. A State criminologist also testified and gave his expert opinion that the victim's clothes were in a condition consistent with the victim's having been dragged against pavement. There was also evidence that the defendant was drunk at the time of the incident. The defendant's evidence gave a different account of the incident and indicated that the victim caused his own death by jumping or falling out of the truck. Nevertheless, we cannot say as a matter of law that no rational trier of fact could find beyond a reasonable doubt that the defendant caused the victim's death negligently or while operating a motor vehicle while under the influence of alcohol. *See State v. Scarlett, supra* at 40, 426 A.2d at 27.

Finally, the defendant argues that the trial court lacked the authority to revoke her license for three years. The defendant was charged and convicted of negligent homicide. This is a Class B

felony, RSA 630:3, and sentencing for the offense is governed by RSA ch. 651. The appropriate sentencing guidelines are set out in RSA 651:2 and do not provide for the revocation of a person's license to operate a motor vehicle. The State argues that trial judges have authority to suspend licenses by virtue of RSA 651:1 II, which provides that the chapter does not deprive courts of any lawful authority to cancel or suspend a license. This provision, however, grants no such authority to suspend or revoke licenses; it provides only that the chapter does not abridge such existing lawful authority derived from other sources. If the legislature should desire to grant such authority, it may of course do so. But in the absence of language to that effect, we find no basis for the court's revocation of the defendant's license. Cf. State v. Thayer, 118 N.H. 819, 824–25, 395 A.2d 500, 504 (1978).

The State contends that RSA 262-A:62 I (Supp. 1979) authorizes the court to suspend the defendant's license for two years and that we should uphold the suspension for that period at least. This assertion is unfounded. That statute gives courts the authority to suspend a person's license for up to two years when the person is convicted of driving while intoxicated. In this case, the defendant was charged with negligent homicide. The State's theory at trial was that the defendant caused the death of the victim by operating her vehicle in a negligent manner or while intoxicated. The jury verdict below was general, and it is therefore impossible to say whether the jury believed the defendant to be intoxicated. Consequently, the State cannot rely on RSA 262-A:62 I (Supp. 1979) as authority for imposing the two-year suspension in this case. Accordingly, that part of the sentence suspending the defendant's license must be vacated.

*Affirmed in part; vacated in part.*

DOUGLAS, J., dissented in part; the others concurred.

DOUGLAS, J., dissenting in part:

Because I conclude that a trial judge under these circumstances can suspend a license, I dissent on that point only.