Rockingham
No. 80-449

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL K. REARDON

June 26, 1981

*Gregory H. Smith,* attorney general (*Michael A. Pignatelli,* attorney, on the brief and orally), for the State.

*James E. Duggan*, of Concord, appellate defender, by brief and orally, for the defendant.

PER CURIAM. The issues in this burglary case involve the composition of the jury, the sufficiency of the evidence, and the trial court's instruction to the jury. We uphold the defendant's conviction.

The defendant was indicted for burglary (RSA 635:1) for having entered a dwelling house on January 30, 1980, without permission, license or privilege and with the "purpose to commit the crime of theft therein." He was convicted by a jury and appealed after the Court (*Bean*, J.) had denied his motion to set aside the verdict.

At the outset, we decline to reconsider our decision in *State v. Elbert*, 121 N.H. 43, 424 A.2d 1147 (1981), and therefore reject the defendant's claim with respect to the composition of the jury.

 The defendant also claims that there was insufficient evidence to support a finding beyond a reasonable doubt that he entered the dwelling with the intent to commit the crime of theft therein. In deciding this issue, we must consider all of the evidence and all reasonable inferences therefrom in the light most favorable to the State, *State v. Qualters*, 121 N.H. 484, 487, 431 A.2d 780, 781–82 (1981); *State v. Meloon*, 119 N.H. 76, 77, 397 A.2d 1041, 1043 (1979), and determine whether any rational trier of fact could have found the existence of this element of the crime beyond a reasonable doubt. *State v. Kiluk*, 120 N.H. 1, 4, 410 A.2d 648, 650 (1980); *see State v. Scarlett*, 121 N.H. 37, 40, 426 A.2d 25, 27 (1981). An intent to steal may be inferred from the defendant's conduct under all the circumstances, and an "unexplained breaking and entering may give rise to an inference that it was made with an intent to commit larceny. . . ." *State v. Wills*, 107 N.H. 107, 108–09, 218 A.2d 47, 48–49 (1966); *see State v. Kelley*, 120 N.H. 14, 16, 413 A.2d 300, 302 (1980).

 In the instant case, there was evidence that the defendant was out of work and without funds and was concerned about the cost of driving to Massachusetts each day to attend a drug treatment program. The defendant, on the night in question, had driven the owner of the home that he was charged with burglarizing to a theatre, and a jury could reasonably infer that the defendant thought that no one was home that evening. Two upstairs rooms had been rented to a Ms. Reynolds, however, who arrived home at 9:15 on the night of the crime. She heard someone attempting to enter through the cellar door and called the police, who came to

the house—one entering the house and the other going to the rear of the house. One officer, hearing the cracking of wood, positioned himself near the cellar door. The door "popped open," revealing the defendant on the cellar stairs with a prybar in one hand and a flashlight in the other. The officer, who yelled "Freeze," testified that the defendant raised the prybar in a "menacing manner," but then dropped it and was arrested. He gave no explanation for his entry and did not testify at the trial. Based on this record, we cannot say that no rational person could find beyond a reasonable doubt that the defendant intended to commit the crime of theft within the house at the time he entered it. *See State v. Reed,* 114 N.H. 377, 321 A.2d 581 (1974); *State v. Wills,* 107 N.H. 107, 218 A.2d 47 (1966).

The defendant's final argument relates to the trial court's instructions to the jury. The indictment alleged that the defendant had entered the victim's home with the purpose of committing the "crime of theft therein." RSA 635:1 uses the phrase "with purpose to commit a crime therein." The trial court charged the jury that the State must prove that the defendant had entered the building with a "purpose to commit a crime therein . . . ." Thus the jury instruction followed the language of the statute rather than the indictment and did not refer to the crime of theft. Although the defendant objected, the court for some unexplained reason saw fit not to alter the instruction. The defendant contends that the court erred in failing to specifically refer to the crime of theft in the jury charge.

■ Courts in other jurisdictions are split on the question whether the jury charge should state the particular crime that the defendant allegedly had the purpose to commit when he entered the house. *Compare State v. Baca,* 85 N.M. 55, 58–59, 508 P.2d 1352, 1355–56 (Ct. App. 1973) (upholding a nonspecific charge) *with Champlain v. State,* 53 Wis. 2d 751, 756, 193 N.W.2d 868, 872 (1972) *and People v. Rivera,* 56 A.D.2d 701, 702, 392 N.Y.S.2d 516, 517 (1977) (requiring specificity). Nevertheless, we need not decide whether, under different circumstances, specificity is required in the jury charge because we are satisfied that in this case the instruction did not prejudice the defendant. The indictment was read to the jury at the beginning of the trial. During its deliberations, the jury requested the "exact wording of the charge" and was given the indictment, which clearly referred to the crime of theft. Under these circumstances, we are satisfied that the jury could not have been misled. Consequently, even assuming that the

jury instruction was erroneous, it was not reversible error. *Bernier v. Demers*, 121 N.H. 217, 218, 427 A.2d 514, 515 (1981).

█ Trial judges can avoid issues of this sort in the future by giving the jury explicit instructions when the indictment specifies a particular crime.

*Exceptions overruled; affirmed.*