Strafford
No. 84-307

# The State of New Hampshire

v.

# Gary F. Brooks

June 17, 1985

*Stephen E. Merrill,* attorney general (*Donald J. Perrault,* assistant attorney general, on the brief, and *Gregory Swope,* assistant attorney general, orally), for the State.

*Jeffco, May & Smart,* of Portsmouth (*Dennis M. May* on the brief and orally), for the defendant.

KING, C.J. The defendant, Gary Brooks, was tried in the Superior Court (*Nadeau,* J.) on charges of arson and witness tampering. At the conclusion of the State's case in chief, the trial court granted the defendant's motion for a directed verdict on the witness tampering charge. After trial, the jury found the defendant guilty of arson, RSA 634:1, and the defendant appeals that conviction. We affirm.

The arson charge arose as a result of a fire at Do's Restaurant, in Rochester, on October 10, 1983, at approximately 2:30 in the morning. During the trial, testimony by Brian Colwell, the defendant's accomplice, related that the defendant and several of the defendant's acquaintances, including Colwell, went to Do's Restaurant on the evening of October 9, 1983. While they were at the restaurant, the defendant told Colwell that he was planning to set fire to the restaurant. Colwell and the defendant then went outside to discuss the plan and to view the sites for starting the fire. Following those conversations, Colwell and the defendant obtained rags, gasoline and gallon bottles. They took these ingredients to a park located in East Rochester where they assembled what are known as "molotov cocktails." Colwell drove the defendant to a point along Salmon Falls Road, approximately one mile from Do's Restaurant, where he left the defendant with the bottles filled with gasoline and corked with rags. Then Colwell drove away.

At approximately 2:30 in the morning on October 10, 1983, the patrons and employees of Do's Restaurant heard a crash in the closed lounge section and discovered that the lounge of the restaurant was engulfed in flames. At that point Leo Bernier, one of the patrons, who had exited through the rear door, observed an additional fire burning outside. He also saw a liquor bottle filled with liquid land at his feet. The bottle was thrown by a person wearing a denim jacket, whom Leo Bernier saw fleeing from the scene.

Later that morning, while riding in a police cruiser, Leo Bernier recognized the defendant hitchhiking along the road and identified him as the same man he had seen running from the rear of Do's Restaurant after the fire had started. The defendant was immediately arrested and taken to the Rochester police station. The police officers at the police station smelled an odor of kerosene emanating from the defendant's denim jacket. The jacket was appropriated by the police and held for chemical analysis by the State crime laboratory.

On appeal the defendant questions six of the trial court's evidentiary rulings. Specifically, the defendant claims that the following

actions were erroneous: (1) the admission of testimony by the police concerning the smell of kerosene on the defendant's denim jacket; (2) the exclusion of Mrs. Colwell's testimony concerning prior inconsistent statements by her son, the defendant's accomplice; (3) permitting the State to recall a police officer as a witness to identify various items of physical evidence; (4) the admission into evidence of a denim jacket and a Wolfshmidt vodka bottle containing a gasoline/kerosene mixture; (5) allowing the State to introduce the defendant's prior conviction on cross-examination; and (6) the exclusion of testimony by the defendant's witnesses concerning prior inconsistent statements by the State's witnesses Leo Bernier and Charles Chamberlain.

The defendant moved for a mistrial following the admission of testimony by several police officers that they had smelled kerosene or some similar accelerant on the defendant's jacket at the time he was arrested and brought to the Rochester police station. The trial court denied the motion for mistrial, and the defendant appeals that ruling. Testimony by a chemist at the State crime laboratory indicated that when the jacket was analyzed there was no kerosene, gasoline or similar accelerant on the jacket.

The defendant claims that the admissibility of the jacket is controlled by our holding in *State v. Scarlett*, 118 N.H. 904, 395 A.2d 1244 (1978); however, the facts of *Scarlett* are significantly different from those existing here. In *Scarlett*, the disputed evidence was a bloody bedspread removed from the defendant's apartment. The defendant was charged with committing a sexual assault. The State had provided no expert witness to analyze the substance on the bedspread, and the jury could therefore infer, without a proper evidentiary foundation, that the bedspread was covered with the victim's blood. Under those circumstances, displaying the bedspread to the jury was highly prejudicial to the defendant. We held in *Scarlett* that the error of permitting the jury to see the stained bedspread was not harmless beyond a reasonable doubt and therefore remanded for a new trial. *Id.* at 907, 395 A.2d at 1247.

In this case, an expert witness testified that when the jacket was analyzed no accelerants were found. The expert further testified that if an accelerant had been present on the jacket when it was received by the police, it could have evaporated through the plastic storage bag before the analysis was done. The testimony of the police officers concerning the smell of kerosene or heating oil on the jacket was not precluded by the expert's testimony and was within the scope of lay opinion evidence. *Commonwealth v. Theberge*, 330 Mass. 520, 524, 115 N.E.2d 719, 722 (1953). Generally, decisions

to admit testimony are within the discretion of the trial court, and "the jury can determine whether to believe all, part or none of it." *State v. Thresher*, 122 N.H. 63, 71, 442 A.2d 578, 582 (1982). In this case the jury was free to weigh the evidence presented, and we find no abuse of discretion by the trial judge in his admission of the police officers' testimony or in his denial of the defendant's motion for a mistrial. *See State v. Brady*, 120 N.H. 899, 901, 424 A.2d 407, 409 (1980).

The second and sixth issues raised by the defendant concern the proffered testimony of witnesses who would have testified that certain State's witnesses had made prior inconsistent statements. These State's witnesses were Leo Bernier, a patron at Do's Restaurant; Charles Chamberlain, the fire marshal who inspected the premises after the fire; and Brian Colwell, the defendant's accomplice. The defendant contends that he had a right to present other third-party witnesses to impeach the credibility of the State's witnesses.

The defendant was prevented from introducing evidence contained in a police report which related Officer Catherine Carberry's recollection of Bernier's description of the person he had seen running away from the restaurant after the fire had started. According to the report, the witness Bernier could only remember "that the subject looked to be between 5'6" and 6' tall, had a dungaree jacket on and possibly a beard."

At trial Bernier testified that he recognized the defendant as the person he saw fleeing the scene of the fire. On cross-examination, however, Bernier admitted making the statement recorded in Officer Carberry's report. The trial judge sustained the State's objection to the admission of Officer Carberry's statement because it was consistent with Bernier's testimony on cross-examination and because the police report was hearsay. The trial judge also sustained the State's objection to recalling Officer Carberry to the witness stand to testify as to her recollection of the conversation with Bernier.

The Rochester Police Department report also contained remarks allegedly made to the police by fire marshal Charles Chamberlain during his inspection of the premises on the morning of the fire. The report contained a statement by Chamberlain that it was unlikely or impossible for a bottle to have broken the window of the restaurant from outside. In a second statement, Chamberlain purportedly speculated that the fire was started from inside the building by spreading a liquid over the tables. These statements were repeated to Chamberlain on cross-examination, and he admitted making the substance of both statements, although he could not recall the specific words he had used. The trial court again refused to admit the

police report and refused to recall the police officer to testify about Chamberlain's statements.

■■ Generally New Hampshire adheres to the rule that extrinsic evidence of specific instances of conduct is not admissible to impeach the credibility of witnesses. *See* N.H. R. Ev. 608(b). Proof of collateral facts by contradictory third-party testimony is excluded in order to avoid "surprise, . . . confusion of the jury's attention, and . . . time-wasting." C. McCORMICK, EVIDENCE § 47, at 110 (3rd ed. 1984). It is New Hampshire practice to allow inquiry into collateral issues by cross-examination for impeachment purposes; however, the cross-examiner must take the answer and may not call other witnesses to rebut it. *See id.*

■■ The defendant cross-examined all three of the State's witnesses concerning their prior statements. During cross-examination both Bernier and Chamberlain admitted making the prior statements which the defendant had proposed to submit through third-party testimony. We have held that a defendant is not guaranteed an absolute right, by either the sixth amendment to the United States Constitution or part I, article 15 of the State Constitution, to introduce testimony which is not relevant. *State v. Hunt*, 122 N.H. 59, 60, 440 A.2d 1126, 1127 (1982). The additional testimony concerning the prior statements by Bernier and Chamberlain was merely cumulative, and the trial court's refusal to admit additional extrinsic evidence of those statements for impeachment was a proper exercise of judicial discretion. *See State v. Donovan*, 120 N.H. 603, 607, 419 A.2d 1102, 1105 (1980).

■ The defendant offered the testimony of Mrs. Colwell, who would testify concerning a conversation with her son, Brian Colwell. Mrs. Colwell's recollection was that she had told her son that she had heard Cindy Morin testify at trial that the defendant had threatened to kill Brian Colwell for not providing motor vehicle transportation for him after the defendant had started the fire. The defendant asked to put Mrs. Colwell on the stand in order to rebut Brian Colwell's statement during cross-examination that he had not discussed Cindy Morin's prior testimony with his mother. The court found that this proposed evidence was not relevant to any factual matter in dispute, and accordingly refused its admission. *State v. Stiles*, 123 N.H. 680, 683, 465 A.2d 908, 910 (1983); *State v. Leuthner*, 124 N.H. 638, 641, 474 A.2d 1029, 1030 (1984). Since the testimony proposed was extrinsic evidence offered for impeachment on a collateral issue, the court was not bound to admit it. *See* N.H. R. Ev. 608(b). We find this ruling to be a proper exercise of the trial court's discretion.

■■ The trial court permitted the State to recall Officer Moore for the purpose of refreshing his memory concerning the chain of custody of a piece of physical evidence. Allowing a witness to be recalled is a matter of discretion for the trial court. *State v. Merski*, 123 N.H. 564, 569, 465 A.2d 491, 494 (1983). In its decision to permit the recall of Officer Moore, the court stated that the testimony offered merely concerned the status of the physical evidence and served as a foundation for its identification. The trial court found that the testimony was not prejudicial to the defendant and that its admission was not a denial of his due process rights. We find this ruling to be a proper exercise of the trial court's discretion.

■ The one objection to the introduction of physical evidence which the defendant briefed and argued before this court related to the admission into evidence of a denim jacket removed from the defendant at the Rochester police station after his arrest, and a Wolfshmidt vodka bottle containing a gasoline/kerosene mixture. *See Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983). The defendant contends that a proper chain of custody was not established for the admission of the denim jacket and the Wolfshmidt vodka bottle. The State produced the officer who seized the jacket and who had initialed it for identification. The State also produced the officer who had seized the vodka bottle at the restaurant on the morning of the fire, as well as three other witnesses who identified the bottle. We have held similar identification of physical evidence to be a proper foundation for its admission into evidence. *State v. Thresher*, 122 N.H. 63, 71, 442 A.2d 578, 582 (1982) (a witness' identification of boots as those worn by the defendant was a sufficient foundation for admission into evidence); *State v. Lainey*, 117 N.H. 592, 596, 375 A.2d 1162, 1164 (1977) (identification of burglar's tools by the officer performing the inventory was sufficient to admit them into evidence).

The defendant raises the additional argument that the admission of the denim jacket was prejudicial error because the condition of the jacket was substantially changed while in the possession of the State. The process of analyzing the jacket performed by the State crime laboratory produced holes and scorch marks which had not existed at the time the jacket was seized. There was testimony presented by the State laboratory technician concerning the tests performed on the jacket. Those tests subjected the jacket to extreme heat, from which the jury could have concluded that the tests changed the condition of the jacket. Further, the trial court instructed the jury concerning the changed condition of the jacket and requested that they disregard its scorched condition at the time of trial.

 It is a matter of judicial discretion whether to admit relevant evidence after weighing its probative value against its prejudicial effect. *See State v. Braley*, 81 N.H. 323, 324, 126 A. 12, 13 (1924); N.H. R. Ev. 401, 403. This court will uphold a trial judge's decision to admit evidence unless we find an abuse of discretion. *State v. Hamel*, 123 N.H. 670, 677, 466 A.2d 555, 559 (1983) (citing *State v. Fernald*, 123 N.H. 442, 444, 462 A.2d 122, 124 (1983)). When evidence has been destroyed by the State, we apply the test set out in *State v. Miskolczi*, 123 N.H. 626, 629, 465 A.2d 919, 921 (1983) to determine admissibility. Under *Miskolczi* we must determine whether the evidence is material, whether it was prejudicial to the defendant, and whether the State acted in good faith. The jacket was relevant to the issue of Bernier's identification of the defendant as the person who had fled the scene of the fire. The State appears to have acted in good faith, and the trial court instructed the jury with respect to the condition of the jacket in order to avoid prejudice to the defendant. On these facts we cannot say that the trial judge abused his discretion in admitting the jacket into evidence.

 Finally, the defendant contends that it was error for the court to rule that the State could introduce the defendant's prior kidnapping conviction if the defendant testified. The defendant claims that the court's ruling to allow admission of the prior conviction for impeachment purposes essentially prevented him from testifying. He cites as the sole authority for this argument the dissenting opinion in *State v. Wayne Kelley*, 120 N.H. 14, 20, 413 A.2d 300, 304 (1980). The majority position in *Kelley*, however, was the law in New Hampshire at the time of this trial. *See State v. Cobb*, 123 N.H. 536, 539, 465 A.2d 1203, 1205 (1983); *State v. Robinson*, 123 N.H. 532, 534, 465 A.2d 1201, 1202 (1983); N.H. R. Ev. 609. This court has repeatedly held that prior convictions are admissible to impeach a defendant even if the crimes do not directly involve a lack of veracity. *State v. Cote*, 108 N.H. 290, 294–95, 235 A.2d 111, 114 (1967), *cert. denied*, 390 U.S. 1025 (1968); *State v. Duke*, 100 N.H. 292, 123 A.2d 745 (1956). Such prior convictions are admissible even if those admissions have the "effect of discouraging a defendant from taking the witness stand." *State v. Robinson, supra* at 534, 465 A.2d at 1202.

 Although we have held that a trial court must insure that cross-examination relating to prior convictions does not "cause undue prejudice to the defendant," *State v. Donohue*, 126 N.H. 182, 183, 489 A.2d 139, 140 (1985) (citations omitted), in this case the defendant did not testify and therefore cannot complain of prejudicial cross-examination. The trial court's ruling that the State could introduce the defendant's prior conviction on cross-examination was

a proper exercise of discretion. *See State v. Chaisson*, 123 N.H. 17, 30, 458 A.2d 95, 102 (1983).

Finding no error in the trial court's evidentiary rulings, we affirm the conviction.

*Affirmed.*

All concurred.