**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0405, <u>State of New Hampshire v. Kenneth Coy</u>, the court on June 20, 2018, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Kenneth Coy, appeals an order of the Superior Court (<u>Howard</u>, J.) denying his motion to dismiss criminal charges pending against him. He contends that the trial court erred by not: (1) applying the "prisoner's mailbox rule" to certain letters that he alleges he wrote; and (2) finding implicit in the Interstate Agreement on Detainers (IAD), <u>see</u> RSA ch. 606-A (2001), a right to dismissal when "his attempt to exercise his rights [under the IAD] is thwarted through the malice or the negligence of his jailer."

We first address whether the trial court erred by not applying the "prisoner's mailbox rule." The defendant appears to conflate several evidentiary rules. The "prisoner's mailbox rule," established under the Federal Rules of Appellate Procedure, provides that notices of appeal filed by self-represented prisoners are considered filed upon delivery to prison authorities for forwarding, rather than upon receipt by the receiving court. <u>Houston v. Lack</u>, 487 U.S. 266, 268, 276 (1988). Furthermore, the defendant contends that this rule creates a presumption that the letters that he alleges he wrote were received, when this rule, in fact, addresses only the date on which an appeal is considered filed by a self-represented incarcerated person. <u>See</u> <u>id</u>.

The defendant relies upon <u>Rosenthal v. Walker</u>, 111 U.S. 185, 193 (1884), to argue that "the sending of a letter without return creates an evidentiary presumption that the letter was received and read by the recipient." However, <u>Rosenthal</u> stated that, when the presumption "is opposed by evidence that the letters never were received, [the evidence] must be weighed with all the other circumstances of the case . . . in determining . . . whether the letters were actually received." <u>Id</u>. at 194; <u>see</u> <u>Lee v. State</u>, 182 P.3d 1169, 1171 (Ariz. 2008) (stating "mail delivery rule" presumption that properly mailed letter will reach addressee disappears if addressee denies receipt).

The defendant contends that we adopted this rule in <u>Hogan v. Pat's Peak Skiing, LLC</u>, 168 N.H. 71 (2015). However, <u>Hogan</u> merely held that the statutory notification to a ski area of an injury, <u>see</u> RSA 225-A:25, IV (2011), is effective upon mailing, rather than upon receipt. <u>Hogan</u>, 168 N.H. at 75; <u>cf</u>. <u>Restatement (Second) of Contracts</u> § 63, at 151 (1981) (stating contract acceptance effective

when mailed); Ayotte v. Department of Employ. Security, 114 N.H. 147, 148, 149 (1974) (finding appeal from administrative decision effective when received by court, not when mailed).  It did not address any presumption regarding whether a letter was mailed and received.  Furthermore, the trial court was not obliged to accept the defendant's testimony that he mailed the letters at issue.  See State v. Wills, 107 N.H. 107, 110 (1966).  Accordingly, upon this record, we conclude that the trial court did not err by declining to employ the prisoners' mailbox rule.

We next address whether the trial court erred by not inferring a remedy under the IAD.  Article III(a) of the IAD requires that a prisoner be brought to trial within 180 days after he has "caused to be delivered" a request for disposition of charges pending against him in another jurisdiction.  RSA 606-A:1, art. III(a); State v. Dolbeare, 140 N.H. 84, 86 (1995).  To initiate this process, the prisoner must deliver a written notice and request to "the warden, commissioner of corrections or other official having custody of him."  RSA 606-A:1, art. III(b).  In the absence of a waiver, the defendant's inability to stand trial, or a proper continuance, the pending charges must be dismissed with prejudice if a prisoner is not brought to trial within the prescribed time period.  RSA 606-A:1, art. V(c); Dolbeare, 140 N.H. at 86.

The 180-day time period does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.  Fex v. Michigan, 507 U.S. 43, 52 (1993).  The prisoner must establish that the court and the prosecutor in the receiving State actually received the request.  See id.  As the defendant acknowledges, the IAD "fails to establish any express remedies when the failure to make a proper IAD request is the result of the incarcerating institution."

The denial of a defendant's motion to dismiss an indictment under the IAD presents a question of law, which we review de novo.  State v. Nelson, 161 N.H. 58, 61 (2010).  We review the factual findings underlying the decision on a clearly erroneous standard.  State v. Brown, 157 N.H. 555, 556-57 (2008).  As a congressionally sanctioned interstate compact, the IAD is a federal law subject to federal construction.  Nelson, 161 N.H. at 61.

In this case, the defendant asks us to "recognize that the IAD implicitly provides a remedy of dismissal in the event of maliciousness or negligence on the part of prison officials."  However, we need not address this issue because the defendant failed to establish that he delivered the requisite request to "the warden, commissioner of corrections or other official having custody of him," RSA 606-A:1, art. III(b), or that the prison officials acted maliciously or negligently.  See United States v. Henson, 945 F.2d 430, 434 (1st Cir. 1991) (stating prisoner bears burden of demonstrating strict compliance with IAD procedures).

The defendant testified that, in December 2007, he placed a letter addressed to "Records Officer" in the prison's internal-mail receptacle. Even if the trial court accepted this testimony, this letter was not addressed to the "official having custody" of the defendant, nor did it request a disposition of the pending New Hampshire charges against him. Instead, the letter merely requested "help . . . [to] file the necessary paperwork to get a speedy trial, under the Agreement on Detainers." (Emphasis omitted.)

Upon receiving no response to this request for assistance, the defendant took no further action at the prison to secure his rights under the IAD; he did not repeat his request for assistance, attempt to contact the records officer or another official through "staff access," or write to the official in charge of the prison. See id. at 435 (stating that prisoner who relies on default by prison having custody of him must show that he substantially complied with IAD to the extent possible); but see Fex, 507 U.S. at 52 (stating that IAD request does not trigger time limit until received by court and prosecutor in State that issued detainer).

Furthermore, the defendant offered no evidence that any prison official acted negligently or maliciously. Cf. Bursque v. Moore, 227 A.2d 255, 256 (Conn. Super. Ct. 1966) (stating prisoner made more than 35 unsuccessful written requests to jailer for IAD forms, at times averaging more than three written requests per week), abrogated by Giardino v. Bourbeau, 475 A.2d 298 (Conn. 1984); Pittman v. State, 301 A.2d 509, 513 (Del. 1973) (stating prisoner requested IAD forms from correct prison official and made demand for speedy trial to receiving State prosecutor and court), superseded by statute, as recognized in State v. Harris, 2017 WL 1550251, at *7 n.85 (Del. Super. Ct. Apr. 26, 2017).

On this record, we conclude that the trial court did not err by declining to adopt the remedy advocated by the defendant.

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,
Clerk**

3