Strafford
No. 78-178

### THE STATE OF NEW HAMPSHIRE

v.

### ALFRED P. SCHULTE

January 31, 1979

*Thomas D. Rath*, attorney general (*Peter W. Mosseau* orally), for the State.

*Tetler & Holmes*, of Hampton (*Edward R. Woiccak* orally), for the defendant.

GRIMES, J.   Defendant was convicted after a trial by jury of four charges of obtaining drugs by fraud and deceit. RSA 318-B:20 (Supp. 1977). His exceptions were transferred by *King*, J.

Defendant claims that the evidence was insufficient to sustain his conviction, that the trial court erred in not giving requested instructions, and that he was sentenced without a written probation department presentence report despite his request to postpone sentencing until one could be obtained.

RSA 318-B:20 makes it unlawful for any person "to obtain or attempt to obtain a controlled drug . . . by fraud, deceit, misrepresentation; or subterfuge; or . . . by concealment of a material fact; . . . or [to] represent himself to be . . . a practitioner or other authorized person." RSA 318-B:20 I, III (Supp. 1977). Defendant was indicted on four counts for violation of this prohibition.

Defendant first contends that the trial court erred in denying his motions to dismiss and for a directed verdict. We disagree. The testimony at trial from the pharmacist who filled four prescriptions for defendant, each for a controlled drug, was that defendant, dressed in suit and tie and wearing a "beeper" on his belt which was beeping, entered the store just before the 9 p.m. closing. The witness described the beeper as an instrument that doctors wear on their belts so they can be contacted in case of need. Defendant asked for delaudid, a narcotic drug requiring a doctor's prescription, and the pharmacist asked for identification. Defendant produced a card with his picture on it and bearing the words Dr. Alfred Schulte, Lahey Clinic. Defendant stated he needed the drug because he was taking care of a retired general in Somersworth who was quite ill. He further stated that he was associated with the Pease Air Force Base and that he could get the

drug there, but it was late and he did not want to get involved with all the paper work.

According to the testimony, the pharmacist made out the prescription and requested and received from the defendant his Drug Enforcement Administration (DEA) number. He made note of the number on the prescription, had defendant sign it, and gave him the drugs. The defendant purchased other medical supplies, including syringes, needles, tubing, sterile water, etc., paying cash for all items. While the pharmacist filled the prescription, the defendant asked to use the telephone to call his answering service to answer the beeper. The pharmacist testified that he heard the defendant admonish someone not to bother him, but to refer the calls "to another doctor." The pharmacist also testified that on three other occasions the defendant came in for controlled drugs, and that he filled prescriptions for him in reliance upon the events which occurred on the first occasion.

The State produced the director of public health, who testified that defendant was not licensed in New Hampshire to practice medicine. The State also produced a compliance investigator from the Federal Drug Enforcement Administration, who testified that DEA numbers are issued to practitioners who are licensed by the appropriate State agency. He further testified that the number given by defendant was false and that no number had been issued to defendant by his agency.

It is axiomatic that in reviewing motions to dismiss and for a directed verdict, we must view the evidence most favorably to the State and consider all reasonable inferences from it. *State v. Dupuy,* 118 N.H. 848, 395 A.2d 851 (1978); *State v. Breest,* 116 N.H. 734, 741, 367 A.2d 1320, 1326 (1976). The evidence in this case supports a verdict of guilty. The fact that defendant gave a false DEA number and that no number had been issued to him is sufficient to support a finding that he was not a practitioner authorized to prescribe drugs in this or any other State. The giving of the false DEA number was in itself sufficient to support the guilty finding. As the pharmacist testified, that number is the "item that truly describe[s] whether or not the person has obtained the authority to sign . . . for a narcotic, controlled drug." Obtaining controlled drugs by knowing use of a false DEA number violates RSA 318-B:20 (Supp. 1977), even if the accused is, in fact, a doctor or practitioner in another State. In view of this, the trial court did not err in refusing to give the defendant's requested instruction that the State was required to prove that defendant was not a practitioner in another State.

■ Defendant complains that the trial judge refused to postpone sentencing until a presentence report could be filed by the probation department. RSA 651:4 I provides in pertinent part that "[n]o person convicted of a felony shall be sentenced before a written report of a presentence investigation has been presented to and considered by the court, unless waived by defendant and the state." It has been the usual practice in this State for the probation department to make the investigation prior to trial or a guilty plea so that the sealed report, which is not opened until after conviction, can be readily available for sentence purposes without further delay. Statements made to the officer are not admissible against a defendant on the question of guilt.

■ Defendants, of course have a right not to talk to a probation officer prior to conviction, as did this defendant on advice of his counsel. Such a refusal does not constitute a waiver under RSA 651:4 I. Nor does such a refusal prevent the preparation of a presentence report. Even though the report will not include information obtained from the defendant himself, his prior record, if any, and any family and other background material could be obtained from other sources. When a report is unavailable at the time of sentencing, the defendant would ordinarily be entitled to a postponement until one is presented and considered. In the case before us, however, the defendant had been on probation on a previous charge and his probation officer was present in the courthouse at the time of sentencing. The officer testified under oath regarding defendant and made recommendations regarding sentence. We are of the opinion that, under the special facts of this case, there was substantial compliance with the purposes of the statute.

*Exceptions overruled.*

All concurred.