Hillsborough
No. 79-116

## The State of New Hampshire

v.

## Richard Kiluk

January 24, 1980

*Thomas D. Rath*, attorney general, and *Peter W. Mosseau*, attorney (*Donald J. Perrault*, attorney, orally), for the State.

*Cathy J. Green*, of Manchester (*Michael I. Winograd*, of Concord, orally), for the defendant.

GRIMES, C.J.  In this aggravated assault case, the issues are whether certain evidence claimed to be hearsay was erroneously admitted, whether the evidence was sufficient to prove "serious bodily injury" and whether the trial court misled the jury by its instructions. We uphold the conviction.

The indictment against the defendant stated that he "did recklessly cause serious bodily injury to William Prindiville by striking the said William Prindiville in the left eye with a fork." He was tried by jury and was found guilty. His motion to set aside the verdict was denied and all his exceptions were transferred by *Wyman*, J.

The following facts appeared from the victim's testimony. About 1:15 A.M., on December 18, 1977, Prindiville arrived at Steve's, a truck stop in Manchester, for coffee. He had been in three different clubs, but had had only three alcoholic drinks during the evening. While drinking his coffee, he watched four men, including the defendant, enter the restaurant. They were a "wild bunch," pushed people around and appeared to be intoxicated. The defendant pushed Prindiville, who pushed back but declined the defendant's invitation to step outside. Prindiville sat down and another of the group came over and asked him to "forget everything." An objection to this testimony on the grounds of hearsay was overruled on the basis that it was part of the res gestae. Prindiville was allowed to continue his testimony and related that the person stated "forgive us . . . we're all drunk . . . you overlook it and I will too." No objection was made to the latter testimony. Prindiville further testified that after he finished his coffee, he went out to his truck but was turned around by someone, saw "something coming down" and was struck in the eye and forehead. At the same time, he hit his assailant, knocking him to the ground. He

recognized his attacker as the defendant and, observing a fork in his hand, accused him of using a weapon. He could not state whether he was struck with a fork or a fist. He returned to the diner but then went to a hospital. His wounds required seven sutures, five on his eyelid and two on his forehead. He also sustained abrasions on the lower eyelid, two scratches on the eyeball and a bruised thigh. A doctor testified that the victim's eye injury was consistent with a blow from a sharp instrument. Tests revealed that although Prindiville could see with his injured eye his vision was probably blurred.

At the close of the State's evidence, the defendant moved to dismiss on the ground that the State had failed to prove serious bodily injury. The motion was denied subject to exceptions.

The defendant, Kiluk, took the stand and testified that when he entered the diner, he saw the victim about to fight with another man and that he helped break up the altercation. He stated that as Prindiville left the diner, he asked the defendant to come outside. Kiluk stated that he refused but a second man grabbed him by the collar and told him to come outside. Kiluk said that he went outside intending to run away if possible, but that the second man hit him from behind, causing him to reel toward Prindiville. He stated that Prindiville started a fight with him which ended with Prindiville on top of, and striking, the defendant until a bystander warned Prindiville that someone was coming. Kiluk further stated that he walked away from the scene and was hitching a ride to the hospital when he was arrested. He testified that he did not have a weapon and did not see one in Prindiville's possession.

■ The defendant argues that the admission into evidence of the statement by his companion that "we're all drunk" was error. The State argues that no objection or exception was taken to that particular statement. Although defendant did object to the initial response, at the time the objection was made no hearsay had entered the case and there was no warning as to what would come next. The statement "we're all drunk," however, was clearly hearsay and called for a renewed objection and a motion to strike and an instruction to the jury to disregard. That statement was of an entirely different nature from the one to which the objection was made and on which the court ruled. A specific objection would have allowed the trial court to correct any error that may have been made. *See, e.g., State v. Belkner*, 117 N.H. 462, 471, 374 A.2d 938, 943 (1977). Having failed to object, the defendant may not now have the issue considered here. *State v. Josselin*, 119 N.H. 936, 409 A.2d 1336 (1979); *State v. Boisvert*, 119 N.H. 174, 400 A.2d 48 (1979); *State v. Meloon*, 119 N.H. 76, 397 A.2d 1041 (1979).

Defendant next argues that the evidence was not sufficient to support a finding of "serious bodily injury." The injuries to Prindiville have already been outlined above. Five sutures were required to close the wound in his eyelid and two on his forehead. It was probable that his sight was blurred because of the wounds. RSA 625:11 defines bodily injury as "any harm to the body which causes severe . . . loss of or impairment to the health or the function of any part of the body."

██ In ruling on the sufficiency of the evidence, we must decide whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found this element of the crime beyond a reasonable doubt. *State v. Schulte*, 119 N.H. 36, 398 A.2d 63 (1979); *Jackson v. Virginia*, 99 S. Ct. 2781 (1979). In our opinion, the evidence in this case meets this test. A wound requiring sutures and a scratched eyeball resulting in blurred vision certainly qualify as serious bodily injury.

Defendant's final argument is that he was prejudiced by the charge to the jury which incorporated elements of other crimes under the statute such as attempt and aggravated assault "by means of a deadly weapon." Although a fork would qualify as a weapon "capable of producing death or serious bodily injury," when used in the manner alleged, the indictment did not expressly charge the defendant with use of a "deadly weapon" in the exact words of the statute. Defendant's argument is, therefore, that the jury may have found him guilty of a charge which was never made. *See Dunn v. United States*, 99 S. Ct. 2190 (1979).

█ We are of the opinion that the defendant was not prejudiced by the court's charge. Other than in reading the statute which mentions attempted aggravated assault, that crime was not mentioned. We are satisfied that the charge made it abundantly clear that defendant was being charged with the consummated crime and not with attempt.

The statute read to the jury defines the crime of aggravated assault as "knowingly or recklessly caus[ing] serious bodily injury to another or bodily injury to another by means of a deadly weapon." The court then added "[t]hat's aggravated assault . . . serious bodily injury or bodily injury plus a deadly weapon." The court then gave the statutory definition of a deadly weapon as meaning a "firearm, knife or other substance or thing . . . which in the manner in which it is used . . . is known to be capable of producing death or serious bodily injury." This was followed by the statutory definition of serious bodily injury as stated above.

After the jury had deliberated for about one hour, a request was made for an explanation of the difference between aggravated assault and assault. The court instructed the jury that, for the purposes of this

case, aggravated assault meant causing "serious bodily injury" and then went on to explain simple assault. There was no exception to this additional charge.

In our opinion, two considerations show that there was no prejudice to the defendant. First, the additional instruction made it perfectly clear that in this particular case aggravated assault was confined to "serious bodily injury" even though from the original charge the jury had learned that it could also be committed by nonserious bodily injury inflicted by a deadly weapon. Second, even assuming that the jury did return a verdict on the basis of use of a dangerous weapon, the indictment was sufficient to support such a verdict.

RSA 631:2 creates only one offense of aggravated assault, which may be committed in different ways. The defendant was clearly informed by the indictment that he was charged with aggravated assault, and a judgment on the indictment would bar any future trial of defendant for aggravated assault against Prindiville arising from the same occurrence. *State v. Harlan*, 116 N.H. 598, 364 A.2d 1254 (1976). The indictment specified facts sufficient to inform the defendant with adequate definiteness, thus enabling him to prepare a defense. The use of a deadly weapon was clearly set forth with the specification that he used a fork. Although the words "deadly weapon" were not used, the striking of a person in the eye with a fork, as alleged, clearly identifies the fork as a deadly weapon. The defendant was not left in doubt as to the offense with which he was charged nor the means by which he was alleged to have committed the offense. *State v. Belkner*, 117 N.H. 462, 374 A.2d 938 (1977); *State v. Greenwood*, 113 N.H. 625, 312 A.2d 695 (1973); 41 Am. Jur. 2d, *Indictments and Informations* § 105 (1968); *see* 42 C.J.S., *Indictments and Informations* § 100 (1944); Annot., 121 A.L.R. 1088 (1939). Assuming, therefore, that the jury returned a verdict on the basis of the use of a deadly weapon, there is no prejudice to the defendant inasmuch as he was not convicted of a crime with which he had not been charged.

*Exceptions overruled.*

All concurred.