Strafford
No. 83-276

THE STATE OF NEW HAMPSHIRE

v.

BRUCE SHANNON

November 9, 1984

*Gregory H. Smith,* attorney general (*Robert B. Muh,* attorney, on the brief and orally), for the State.

*Craig F. Evans,* of Durham, by brief and orally, for the defendant.

DOUGLAS, J. The defendant appeals his convictions for armed robbery and assault, arguing that: (1) his conviction for assault amounted to a violation of the double jeopardy clause; (2) hearsay evidence was improperly admitted against him at trial; (3) the court erred in denying a requested jury instruction; (4) his conviction for armed robbery, a class A felony, was improper, as the indictment did not specify the essential element of use of a deadly weapon; and (5) there was insufficient evidence to support his convictions. For the reasons that follow, we reverse both convictions and remand for a new trial.

The record establishes the following facts. On September 11, 1982, at approximately 6:30 p.m., a man entered the Lafayette Street Market, a grocery store in Rochester owned by Roger Chasse. The man had a paper bag over his head and carried a length of wood. He beat Chasse with the wood, forced him to the ground and moved toward the cash register. At that point, Chasse summoned his two guard dogs and they chased the assailant away. The defendant was

arrested shortly thereafter, following a brief police investigation of the incident.

The defendant was indicted for armed robbery, RSA 636:1, and second degree assault, RSA 631:2 (Supp. 1983). The armed robbery indictment alleged that the defendant "[d]id purposely use physical force on another person in the course of committing the crime of theft . . . to wit: He did strike one Roger Chassie [sic] about the head with a blunt instrument while demanding United States currency . . . ." The assault indictment alleged that the defendant "[d]id recklessly cause bodily injury to another by means of a deadly weapon, to wit: He did strike one Roger Chassie [sic] about the head with a blunt instrument, a hammer handle."

The defendant moved, before trial, to dismiss the assault indictment, alleging that the essential elements in the assault indictment and the robbery indictment were the same and that, therefore, the indictment violated the double jeopardy clause of the fifth amendment to the United States Constitution. The motion was denied by the Superior Court (*Goode*, J.), subject to the defendant's exception. After a jury trial, the defendant was convicted of armed robbery, RSA 636:1, and second degree assault, RSA 631:2 (Supp. 1983). He appeals both convictions.

## I. *Double jeopardy*

The defendant first argues that the trial court erred in denying his motion to dismiss the assault indictment. On appeal, he now raises both federal and State constitutional claims. It is well settled in this State, however, that arguments not presented below may not be raised on appeal. *State v. Laliberte*, 124 N.H. 621–22, 474 A.2d 1025, 1025 (1984). Accordingly, we will consider the merits of the defendant's argument solely under the double jeopardy clause of the fifth amendment to the United States Constitution because State issues were not raised below. *See State v. Miskolczi*, 123 N.H. 626, 628, 465 A.2d 919, 920 (1983); *compare State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983) (when defendant raises State constitutional claims we will address those claims).

The superior court denied the defendant's motion to dismiss, citing *Blockburger v. United States*, 284 U.S. 299 (1932), as authority. In *Blockburger*, the United States Supreme Court held:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."

*Id.* at 304.

The United States Supreme Court recently reconsidered the *Blockburger* rule. In *Missouri v. Hunter*, 459 U.S. 359 (1983), the court construed the *Blockburger* test as a rule of statutory construction and directed that the rule should not apply where there is a clear indication of contrary legislative intent. *Id.* at 367–68. The court then held that when a legislature specifically authorizes cumulative punishment under two different statutes, regardless of whether those two statutes proscribe the same conduct under the *Blockburger* test, the double jeopardy clause does not preclude the imposition, in a single trial, of cumulative punishments under those statutes. *Id.* at 368–69.

The New Hampshire Legislature has not specifically authorized cumulative sentences for armed robbery and assault. Therefore, *Missouri v. Hunter* is inapplicable to the case before us. Since it appears that the *Blockburger* rule still controls when there is no clear indication that a legislature intended otherwise, we will consider the defendant's double jeopardy claim using the *Blockburger* test.

■ Proof that the defendant used physical force, *while in the course of committing theft*, is essential to a conviction for armed robbery, RSA 636:1, but it is not necessary that the defendant be in the course of committing theft for a conviction for assault, RSA 631:2 (Supp. 1983). Additionally, the State must establish that the defendant *caused bodily injury* to obtain an assault conviction under RSA 631:2 (Supp. 1983), while bodily injury is not essential to a conviction for armed robbery, RSA 636:1. Because "each provision requires proof of a fact which the other does not," *Blockburger v. United States*, 284 U.S. at 304, we conclude that the convictions for armed robbery and assault do not violate the double jeopardy clause of the Federal Constitution. Accordingly, the superior court's denial of the defendant's motion to dismiss the assault indictment was correct.

## II. *Hearsay*

We now turn to the defendant's claim that hearsay evidence was improperly admitted against him at trial. The record indicates that after the guard dogs chased the assailant from the store, Mr. Chasse called the police. Two Rochester police officers responded to the call and arrived at the market within minutes. At trial, the police officers were questioned as to their activities once they arrived at the market.

Police Lieutenant Robert Bridges testified that he went into the store and spoke to Mr. Chasse. He then relayed information he

obtained from Mr. Chasse, concerning the assailant's description, to a police officer who arrived at the scene as a back-up unit. He testified that he returned to the police station after an ambulance arrived.

Police Officer Clarke, who accompanied Lieutenant Bridges in responding to the call, testified that when he arrived at the market, he spoke with "some people" outside. When he began to testify as to statements made during the conversations, defense counsel objected on hearsay grounds. Counsel for the State claimed that the testimony was not hearsay because it was not being offered for the truth of the matter asserted, but was offered to give the basis for the officer's subsequent actions. The court instructed counsel for the State to rephrase the question by asking the officer what he did as a result of certain conversations.

Counsel rephrased the question, but the police officer responded by recounting a conversation he had with two young boys who informed him that they saw a man run from the back of the market. He testified that they described the man as wearing a blue tee shirt, blue jeans and carrying an axe handle. Defense counsel objected, referring to the court's prior instruction and arguing that the officer's answer was unresponsive to the question put to him. His objection was overruled. When the officer again made mention of the boys' description of the assailant, defense counsel objected on hearsay grounds and a bench conference took place. The court overruled the objection, subject to the defendant's exception.

On appeal, the defendant claims that the testimony was hearsay, that it fit within no exception to the hearsay rule and that its introduction into evidence constituted reversible error. The State argues that the statements were not hearsay because they were not offered for the truth of the matter asserted.

■■ "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement and is generally inadmissible unless it falls within one of the many exceptions which provide for admissibility." *State v. Marcotte*, 124 N.H. 61, 64, 466 A.2d 949, 951 (1983) (citations omitted). Although we do not have a transcript of the bench conference before us, it appears from oral argument that the trial court concluded that the statements were hearsay but admitted them under the "excited utterance" exception to the hearsay rule. *See State v. Hudson*, 121 N.H. 6, 10–11, 425 A.2d 255, 257 (1981). Whether a statement is hearsay or an exception applies are questions for the trial court and we will uphold the court's determination unless it is clearly erroneous. *See Town of Weare v. Paquette*, 121 N.H. 653, 659, 434 A.2d 591, 596 (1981).

■ At trial, the State had to convince the jury that the defendant, who was wearing a blue tee shirt and blue jeans when arrested, was Mr. Chasse's assailant. To do so, it introduced evidence of the events leading to the defendant's arrest. Thus, it elicited Officer Clarke's testimony of the description given to him by the two unidentified boys. Although the boys' statements were elicited during Officer Clarke's narrative of his actions, it is obvious that the description was offered for its content; that is, that the man who ran from the store wore a blue tee shirt and blue jeans. In fact, at oral argument, when asked whether he thought that the jurors used the officer's testimony in concluding that the defendant was Mr. Chasse's assailant, the State conceded that the jurors must have used the evidence for that purpose.

Our conclusion that the State offered the statements for their content is further buttressed by certain statements made by its counsel during his closing argument. While addressing the jury as to the identification of the assailant, counsel made reference to the description given to the officer by the two boys as being corroborative of the victim's description of his assailant and concluded: "So we have two independent descriptions that match."

■■ In the case before us, it appears that the trial court admitted the hearsay testimony because it determined that it fell within the "excited utterance" exception to the hearsay rule. *See State v. Hudson*, 121 N.H. 6, 11, 425 A.2d 255, 257 (1981). Whether a statement fits within the excited utterance exception to the hearsay rule is a question for the trial court, and we will uphold its finding unless it is clearly erroneous. *Id.* The defendant argues, and the State conceded during oral argument, that the statements were not an excited utterance. We agree. There is nothing in the record which indicates that the nontestifying unnamed boys witnessed a startling or shocking event or that they were still in a state of nervous excitement when they gave their description. *See id.* Moreover, the record does not reflect that the circumstances under which the description was given were sufficiently trustworthy so as to allow the statement to be introduced under the standard applied to all proffered hearsay evidence. *See Caledonia, Inc. v. Trainor*, 123 N.H. 116, 121, 459 A.2d 613, 616 (1983).

■ Under our harmless error doctrine, when evidence is improperly admitted during trial, the State has the burden of showing beyond a reasonable doubt that the introduction of the inadmissible evidence did not affect the jury's verdict. *State v. Hughes*, 122 N.H. 781, 783, 451 A.2d 372, 374 (1982). Although in certain circumstances hearsay statements may be characterized as merely

cumulative, thus not constituting reversible error, *see State v. Kenna*, 117 N.H. 305, 309, 374 A.2d 427, 430 (1977), this is not such a case.

■ At trial, the State had to link the defendant to the assailant. Because the assailant wore a paper bag covering his face, the State based its identification upon testimony concerning the assailant's attire. Two witnesses testified on this point, Mr. Chasse and Officer Clarke. Mr. Chasse's testimony that his assailant was clothed in a blue tee shirt and blue jeans was severely tested during cross-examination when the defense attorney revealed that at a prior hearing Mr. Chasse testified that his attacker wore a white sweater and that Mr. Chasse also testified that he did not remember what type of pants his assailant wore. Because Mr. Chasse's testimony was damaged, Officer Clarke's testimony was crucial to the State's case. Officer Clarke's testimony, therefore, cannot be characterized as merely cumulative. The tendency of the officer's statements to prejudice the jury as to the defendant's guilt is without doubt. *State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976); *see State v. LaBranche*, 118 N.H. 176, 179, 385 A.2d 108, 110 (1978). Accordingly, we conclude that the admission of the hearsay statements constituted reversible error, and we reverse the defendant's convictions and remand for a new trial.

Because we remand for a new trial, and because some of the additional issues are likely to be raised in the second trial, in the interest of judicial economy, we address the defendant's additional arguments. *See State v. Shute*, 122 N.H. 498, 503, 446 A.2d 1162, 1165 (1982).

III. *Jury instruction regarding RSA chapter 172-B*

The defendant next argues that the trial court erred in denying his request for an instruction informing the jury that, under RSA 172-B:3 (Supp. 1983), the police have the authority to take an intoxicated person into custody.

The testimony at trial established that shortly after the police officers arrived at the market, they conducted a search of the surrounding neighborhood. When one of the officers approached the residence of one Tony Guyer, the defendant, who had been seated on the front steps, went into the Guyer house and was seen exiting through a side window. After a brief chase, the defendant was apprehended.

At trial, the defendant testified that he conducted himself in the above-described manner because he feared the police would arrest him for being intoxicated. He now argues that because the State's evidence at trial was predominantly circumstantial, the question as

to whether he had a guilty mind when he exited the Guyer residence was crucial to the State's case. Consequently, he asserts that the requested instruction was necessary to show that his actions were based upon a reasonable presumption of possible police arrest and that his actions could have been the result of feelings other than guilt with respect to the alleged offenses.

At the outset, we note that this case is not one in which the defendant is entitled to a jury instruction on his or her theory of defense. *See, e.g., State v. Aubert*, 120 N.H. 634, 635, 421 A.2d 124, 125 (1980). The defendant is not admitting liability and pointing to facts that exonerate, excuse or justify his conduct, but is denying criminal behavior by advancing his theory of the case. *See State v. Guaraldi*, 124 N.H. 93, 467 A.2d 233 (1983). His version of the facts is that he fled from the Guyer home because he was intoxicated and wanted to avoid any trouble with the police, not because he had a guilty mind with respect to the charges brought against him.

The substance of the defendant's argument on appeal is that it is the court's duty to assure that the jury is in a position to ascertain the reasonableness of the defendant's conduct in light of all the factors of the case and that the defendant thus was entitled to a jury instruction that there is a statute permitting the police to take intoxicated persons into custody.

 It is "within the trial court's sound discretion to determine '[w]hether an instruction on a particular issue is necessary to assist the jury in making its verdict.'" *State v. Meloon*, 119 N.H. 76, 77, 397 A.2d 1041, 1043 (1979) (quoting *Fusegni v. Portsmouth Housing Auth.*, 114 N.H. 207, 209, 317 A.2d 580, 582 (1974)). We agree with the defendant that "[a] trial judge's primary duty in charging the jury is to clarify the issues of the case, and to assist the jury in understanding the questions to be resolved," *State v. Bird*, 122 N.H. 10, 15, 440 A.2d 441, 443 (1982), and that the court must instruct the jury fully and correctly as to the law applicable to the case. *State v. Skaff*, 94 N.H. 402, 407, 54 A.2d 155, 159 (1947).

 In the case before us, however, the defendant never advanced a legal basis for his conduct. The defendant requested the instruction on RSA 172-B:3 (Supp. 1983) to bolster his testimony that he fled because he wanted to avoid trouble with the police because of his intoxication. The credibility of the defendant was at issue, and the fact that his conduct had a basis, in law, would not have assisted the jury in resolving the question whether, *in fact*, the defendant fled because he was intoxicated.

The defendant took the stand and testified as to his version of the facts. During closing argument, defense counsel also urged this the-

ory on the jury. The defendant thus was given ample opportunity to present his theory and the jury was free to consider it. Accordingly, we conclude that the trial court's refusal to give the requested instruction was not an abuse of discretion.

## IV. *Robbery indictment and deadly weapon*

The defendant also claims that his conviction for armed robbery, a class A felony, was improper, as the indictment returned against him did not allege an essential element of armed robbery, a class A felony; namely, that the defendant was armed with a deadly weapon. *See* RSA 636:1, III. The indictment at issue stated that the defendant:

> "[d]id purposely use physical force on another person in the course of committing the crime of theft, and such person being aware of such force, to wit: He did strike one Roger Chassie [sic] about the head with a blunt instrument while demanding United States currency . . . ."

At the close of trial, the court submitted a questionnaire to the jury in which it included the question whether the jury found, beyond a reasonable doubt, that the blunt instrument, allegedly used by the assailant, was a deadly weapon. The significance of the question was the judge's belief that if the jury concluded that the defendant was armed with a deadly weapon, he could be convicted of a class A felony. *See* RSA 636:1, III. Defense counsel objected to the submission of the question, arguing that the indictment returned against the defendant alleged only a class B felony, as it did not specify the use of a deadly weapon, and that the court therefore was precluded from upgrading the offense specified in the indictment to a class A felony.

The question was submitted to the jury over the defendant's objection, and the jury found that the blunt instrument was, in fact, a deadly weapon. Consequently, the defendant, already having been found guilty of robbery, was sentenced to 7½ to 15 years, a sentence commensurate with that for a class A felony. *See* RSA 651:2, II. The defendant appeals his conviction, arguing that the indictment returned against him was insufficient to support a conviction for armed robbery, a class A felony.

 Under part I, article 15 of the New Hampshire Constitution, "[n]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him . . . ." "The purpose of an indictment is to apprise the defendant of the charges he must be prepared to meet and to protect him from being placed in double jeopardy for the same crime at a

later date." *State v. Shute*, 122 N.H. 498, 504, 446 A.2d 1162, 1165 (1982). For an indictment to be constitutionally sufficient, it must give the defendant enough information to allow him to prepare for trial, *State v. Beaudette*, 124 N.H. 579, 582, 474 A.2d 1012, 1014 (1984); *State v. Taylor*, 121 N.H. 489, 495, 431 A.2d 775, 778 (1981), and it "must include all of the elements which constitute the offense charged," *State v. Stiles*, 123 N.H. 680, 683, 465 A.2d 908, 910 (1983). Accordingly, an analysis of the sufficiency of an indictment must begin with an examination of the statutory language of the offense charged.

RSA 636:1 sets out the crime of robbery. The statute provides:

"I. A person commits the offense of robbery if, in the *course of committing a theft*, he

(a) uses physical force on the person of another and such person is aware of such force; or

(b) threatens another with or purposely puts him in fear of immediate use of physical force.

II. An act shall be deemed 'in the *course of committing a theft*' if it occurs in an attempt to commit theft, in an effort to retain the stolen property immediately after its taking, or in immediate flight after the attempt or commission.

III. Robbery is a class B felony, except that if the defendant

(a) was actually armed with a deadly weapon; or

(b) reasonably appeared to the victim to be armed with a deadly weapon;

(c) inflicted or attempted to inflict death or serious injury on the person of another, the offense is a class A felony."

RSA 636:1.

 RSA 636:1, I outlines the basic elements that must be proven for the State to secure a conviction for robbery. Undoubtedly, the indictment returned against the instant defendant sufficiently specified the basic statutory elements. RSA 636:1, III provides that the offense of robbery is a class B felony. Hence, the indictment at issue specified facts sufficient to inform the defendant that he was charged with robbery, a class B felony.

Paragraph III, however, also specifies additional facts, which, if proven, will upgrade the offense to a class A felony. The additional facts set forth in paragraph III are essential elements of the class A felony. *See State v. Burke*, 122 N.H. 565, 569, 448 A.2d 962, 964 (1982) ("To be guilty of armed robbery, a defendant must be actu-

ally armed with a deadly weapon, RSA 636:1 III(a), reasonably appear to be armed with a deadly weapon, RSA 636:1 III(b), or inflict or attempt to inflict death or serious bodily injury to another, RSA 636:1 III(c)."). *See also* RSA 625:11, III(a) ("'Element of an offense' means such conduct, or such attendant circumstances, or such result of conduct as is included in the definition of the offense").

Accordingly, at least one of the additional elements set out in RSA 636:1, III must have been specified in the indictment at issue for the State to secure a conviction for a class A felony. *See State v. Stiles*, 123 N.H. 680, 683, 465 A.2d 908, 910 (1983); *State v. Champagne*, 119 N.H. 118, 121–22, 399 A.2d 287, 289 (1979) (it is unconstitutional for the trial court to upgrade an offense when the State has not specified in its indictment the aggravating facts set forth in the statutory definition).

In the instant case, the trial court questioned the jury as to whether it found that the blunt instrument allegedly used by the defendant was a deadly weapon. Hence, we are concerned only with whether the State sufficiently alleged in the indictment that the defendant was armed with a deadly weapon. RSA 636:1 III(a). The defendant argues that because the indictment did not quote the language of the statute and expressly specify that he was armed with a "deadly weapon," it did not give him enough information to meet the charge of armed robbery, a class A felony. The State claims that the language of the indictment which alleges that the defendant struck the victim "about the head 'with a blunt instrument" adequately specified the use of a deadly weapon. The State cites *State v. Kiluk*, 120 N.H. 1, 410 A.2d 648 (1980), as authority for its position.

In *State v. Kiluk supra*, the aggravated assault indictment returned against the defendant alleged that he caused "serious bodily injury to [the victim] by striking the said [victim] in the left eye with a fork." *Id.* at 2, 410 A.2d at 649. In that case we held that, "[a]lthough the words 'deadly weapon' were not used, the striking of a person in the eye with a fork, as alleged, clearly identified the fork as a deadly weapon." *Id.* at 5, 410 A.2d at 651. We then concluded that the "indictment specified facts sufficient to inform the defendant with adequate definiteness [of the offense charged], thus enabling him to prepare a defense." *Id.*

Critical to this court's conclusion in *State v. Kiluk supra*, that the indictment was sufficient in charging the defendant with aggravated assault, was the fact that RSA 631:2 (1974) created only one offense of aggravated assault. At the time the decision was rendered, aggravated assault was a class B felony, which was committed in different ways. *Id.* Thus, because we had determined that the

indictment had otherwise clearly informed the defendant that he was charged with aggravated assault, we reached the conclusion that he "was not left in doubt as to the offense with which he was charged nor the means by which he was alleged to have committed the offense." *State v. Kiluk, supra* at 5, 410 A.2d at 651.

RSA 636:1, however, creates two offenses, a class B felony, the basic robbery offense, RSA 636:1, I, and a class A felony, a more serious offense, RSA 636:1, III. An indictment charging a defendant with conduct amounting to a class A felony must adequately inform the defendant that he is being charged with that specific offense. *See State v. Champagne*, 119 N.H. 118, 121–22, 399 A.2d 287, 289 (1979).

The indictment at issue does not expressly state that the defendant was charged with a class A felony, nor does it refer to the paragraph of the statute that creates the class A offense. Although reference to a particular paragraph of a statute or to a specific felony is not the touchstone of the sufficiency of an indictment, it is essential that the indictment inform the defendant of the charges against him with adequate definiteness. *State v. Kiluk*, 120 N.H. 1, 5, 410 A.2d 648, 650–51 (1980). While the State need not expressly allege that a defendant was armed with a deadly weapon, *see id.*, the indictment must clearly identify the means used to commit the robbery as involving a deadly weapon. *Id.*

Under New Hampshire law, a deadly weapon is a "firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used is known to be capable of producing death or serious bodily injury." RSA 625:11, V. Accordingly, an indictment must sufficiently set forth enough facts to apprise a defendant that the substance or thing allegedly used by him or her in the commission of an offense is known to be capable of producing death or serious bodily injury. We cannot conclude, in the case before us, that the generic reference to a "blunt instrument," without more, provided the defendant with sufficient facts so that he was clearly informed that he was alleged to have been armed with a deadly weapon and, consequently, that the State was seeking to convict him of a class A felony.

Because the indictment specified only a class B felony, "'the State . . . was, under the facts of this case, simply precluded by the Due Process Clause from calling upon the respondent to answer the more serious charge.'" *State v. Champagne*, 119 N.H. 118, 121, 399 A.2d 287, 289 (1979) (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1973)). Accordingly, we conclude that the trial court erred in

upgrading the offense charged to a class A felony, and upon retrial the defendant may only be tried for the class B felony.

## V. *Sufficiency of the evidence*

The defendant's final argument is that the evidence was insufficient to support his convictions. We must decide this issue because, if the evidence was insufficient to support the convictions, we would have to reverse, *see Jackson v. Virginia*, 443 U.S. 307, 313–14, 316 (1979) (a conviction not based upon sufficient evidence is constitutionally infirm as it constitutes a denial of due process), and would be precluded from remanding for a new trial under the double jeopardy clauses of both the New Hampshire and United States Constitutions. *See Pugliese v. Perrin*, 567 F. Supp. 1337 (D.N.H. 1983) (the double jeopardy clause precludes relitigation of any issue of ultimate fact finally determined by a valid judgment of acquittal). *See also State v. Pugliese*, 120 N.H. 728, 730, 422 A.2d 1319, 1321 (1980).

In deciding this issue, we view the evidence in the light most favorable to the prosecution. *State v. Cobb*, 123 N.H. 536, 540, 465 A.2d 1203, 1206 (1983). "We will uphold the jury's verdict unless 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)). "When the State's case rests upon circumstantial evidence, as it does here, such evidence must exclude all rational conclusions except that the defendant was guilty." *State v. Hopps*, 123 N.H. 541, 544, 465 A.2d 1206, 1208 (1983).

We conclude that the evidence at trial was sufficient to support the defendant's convictions. There was testimony by one witness that, at approximately 6:30 p.m., she observed the defendant, who was clothed in a blue tee shirt and dungarees, walking in the direction of the Lafayette Street Market. She testified that he was holding a denim jacket and was carrying either in his pocket or underneath his jacket, what "looked like . . . a hammer handle, a wooden handle." The victim testified that at approximately 6:30 p.m., he was attacked by a man wearing dungarees and a "bluish" shirt. He stated that his assailant beat him with a "long, round instrument, some kind of handle." Mr. Chasse further testified that his assailant attempted to open the cash register, but was chased away by his guard dogs.

Police Lieutenant Bridges testified that just minutes after the attack, Chasse described his assailant as a white male, wearing a bluish tee shirt and dungarees, and that Bridges gave Chasse's description of the assailant to other police officers in the surround-

ing area. Police Officer Cooke testified that moments after he received the description, he spotted the defendant, who matched the suspect's description. He further testified that the defendant was "carrying what appeared to be something rolled up in his hand, and out of that was protruding an instrument that appeared to be wooden." The officer also testified that when he turned around and approached the defendant, the defendant "bolted from the front stairs [of] the Guyer residence" and then "[d]ived head first out a window." After viewing this circumstantial evidence in the light most favorable to the prosecution, we conclude that it excludes all rational conclusions except that the defendant was guilty.

*Reversed and remanded.*

All concurred.